(75 South. 930)

## BANK OF TALLASSEE v. JORDAN.

(3 Div. 288.)

(Supreme Court of Alabama. May 17, 1917.)

1. BILLS AND NOTES �köm58 — CONDITIONAL DELIVERY—STATUTE.

Under Code 1907, § 4973, providing that every negotiable instrument must be delivered,

etc., where a stockholder in a bank delivered a note which she signed payable to the bank conditionally on all other stockholders paying to the bank sums proportionate to their share values at par, and all the other stockholders did not contribute, as the condition of the delivery contemplated, the stockholder signing the note was not liable thereon, unless the holder was a holder in due course, since the conditional delivery of a note renders it ineffectual as a binding promise to pay until the event happens upon which the condition is based, unless the note is transferred to a bona fide holder in due course.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 104.]

2. BILLS AND NOTES ☞330 — CONDITIONAL INDORSEMENT—"HOLDER IN DUE COURSE"— STATUTE.

Where a bank in writing agreed to take charge of the obligations payable to another bank, to employ proper diligence in collecting them, and to devote the proceeds to its own reimbursement for sums paid out by reason of having assumed the deposit account and liabilities of the other bank, also agreeing to pay over any excess, the unqualified indorsement of a note by the second to the first bank, though made previous to the taking over of the second bank's affairs by the first bank to afford collateral for a loan by a third bank, did not constitute an unconditional purchase of the note for value, rendering the first bank a "holder in due course," as defined in Code 1907, § 5507, since, if the substance of the written agreement had been indorsed on the back of the note, the indorsement would have been restrictive or conditional by sections 4987, 4988, 4991, 4992.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 794–804.

For other definitions, see Words and Phrases, First and Second Series, Holder in Due Course.]

Appeal from City Court of Montgomery; Gaston Gunter, Judge.

Action by the Bank of Tallassee against Mrs. M. R. Jordan. From a judgment for defendant, plaintiff appeals. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Affirmed.

Rushton, Williams & Crenshaw, of Montgomery, for appellant. W. A. Jordan and Ball & Samford, all of Montgomery, for appellee.

McCLELLAN, J. [1] This is an action on a note, executed by Mrs. M. R. Jordan to the People's Savings Bank of Tallassee. The state superintendent of banks found that the capital stock of the bank had become impaired; and, so advising some of the stockholders, directed that the loss must be repaired, else the bank would be closed. The defendant was the owner of 20 fully paid-up shares of the capital stock. At an informal conference of stockholders owning a majority of the capital stock it was thought desirable that all stockholders should pay in to the bank a sum equal to 33⅓ per centum of their respective share values at par. This conclusion, as well as the reason for it, was reported by one of the stockholders attending the conference to Mrs. Jordan, who was not present thereat; and an already written note was presented for her signature. While the testimony does not disclose that she explicitly stipulated for a conditional delivery of the note which she signed, a condition based upon the act of all the stockholders in paying sums proportioned to 33⅓ per centum of their respective share values at par, yet the evidence bearing upon the issue of conditional delivery vel non of the note by Mrs. Jordan entirely justified the trial court in concluding that such, in legal effect, was the stipulation she made when she signed the note and surrendered the possession thereof that it might be carried to the payee, the savings bank. The conditional delivery of a note renders it ineffectual as a binding promise to pay until the event, upon which the condition is based, is met, unless it is transferred to a bona fide holder in due course. Code, § 4973; Sharp v. Allgood, 100 Ala. 183, 14 South. 16; Stone v. Goldberg, 6 Ala. App. 249, 60 South. 744; McClure v. Colclough, 5 Ala. 65.

To attribute to the evidence bearing on this issue the effect of merely showing a promise—and defendant's reliance thereon— that all the stockholders would contribute in the stated proportion to repair the loss in the capital stock would require an unreasonably strained interpretation of the terms and expressions used by Mr. Storrs and Mrs. Jordan at the time she signed the instrument sued on. From the evidence, it is quite clear that Mrs. Jordan refused to make the contribution and to sign the paper then tendered to her for signature unless all the stockholders made contributions in like proportion, and that her yielding and action in signing the note and in delivering it to Mr. Storrs was alone caused by her reliance upon the fact of their contributing, and not upon any one's promise that they would contribute. There was no error in the finding upon this issue that the delivery of the note was contingent, conditional. And, since all the stockholders did not contribute as the condition contemplated, the necessary consequence was that no recovery was due the plaintiff unless it was a "holder in due course" of the note sued on. The plaintiff, the Bank of Tallassee, took over the affairs of the People's Savings Bank under a written agreement the presently important features of which will be indicated. The plaintiff assumed, agreed to pay off all of the liabilities of the savings bank, "except the capital thereof, including all deposits, special deposits, general deposits of depositors and overdrafts, bills payable and all other liabilities of the said People's Savings Bank." The plaintiff bound itself to use—

"all diligence in the management of the assets of the said People's Savings Bank of Tallassee, so purchased by it, and to collect all bills receivable and other evidence of debt as fast as it is consistent with good business, at their face value, unless it becomes necessary to make com-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

promise settlement of any note, mortgage account or other evidence of debt. The said the Bank of Tallassee shall reimburse itself out of moneys collected from said assets for all amounts paid out by it by reason of having assumed the deposits account and liabilities of the said People's Savings Bank.

"It is further agreed by and between the parties hereto that the said the Bank of Tallassee shall render an accounting and make a partial settlement with the People's Savings Bank of Tallassee twelve months from the date hereof, and all moneys collected over and above the liabilities of the said People's Savings Bank of Tallassee by the Bank of Tallassee shall be paid over to the said People's Savings Bank of Tallassee; and the said the Bank of Tallassee shall render an accounting and make a final settlement with the said People's Savings Bank of Tallassee two years from the date hereof, and all moneys and assets collected over and above the liabilities assumed and paid off by the said the Bank of Tallassee shall be paid over to the said People's Savings Bank.

"It is further agreed and understood that the books themselves of the People's Savings Bank of Tallassee have not been sold and delivered to the said Bank of Tallassee, but the said the Bank of Tallassee shall have use of same, for the purpose of facilitating its work in the collection of the assets and bills receivable of the said People's Savings Bank, and the said the Bank of Tallassee does hereby agree to keep and preserve said books with all due diligence, in its vault at Tallassee, Ala., and to return the same to the People's Savings Bank on the day of the final settlement in like order and condition, the natural wear and tear from the use excepted."

[2] The agreement between the savings bank and the plaintiff bank does not disclose an unconditional purchase of this note for value. It appears from the writing that the plaintiff was to take charge of the obligations payable to the savings bank and employ proper diligence in collecting them and to devote the proceeds of such collections to the reimbursement of the plaintiff for the sum or sums it (plaintiff) had paid out "by reason of having assumed the deposit account and liabilities of the said People's Savings Bank"; and, if the plaintiff was thus reimbursed, the plaintiff was obliged to pay to the savings bank the excess. The unqualified indorsement of this note by the payee therein, the People's Savings Bank—even though made previous to the taking over of the payee's affairs by the plaintiff in order to afford collateral for a loan by a New York bank to the savings bank—did not affect to alter the status created by the written agreement executed by the payee bank and the plaintiff bank. If the substance of this written agreement had been in fact indorsed upon the back of this note, the result would have been to constitute a restrictive or conditional indorsement. Code, §§ 4987, 4988, 4991, 4992; 2 Daniel's Neg. Inst. §§ 698, 698a, 698b, 698c, 698d, 699. As between the plaintiff bank and the savings bank the fact that the plaintiff's right to and possession of the note was defined by their written agreement, rather than through the means of an indorsement, to the same end, on the back

of the note, could make no material difference in the character and quality of the plaintiff as a holder of this note. The manifest effect of the agreement, as between these banks, was to restrict the negotiability of this note. Under the agreement the only thing the plaintiff could do was to collect, or to compromise in a proper case, the note. Succeeding to the possession and rights contemplated by the agreement, the plaintiff could not be a holder in due course, as that character of holder is defined in Code, § 5007. A like conclusion from an agreement of similar, though of not so distinct a nature, was reached in Paulson v. Boyd, 137 Wis. 241, 249, 250, 118 N. W. 841. It was there held that, since "the condition of the transfer" was that "the new bank assume the liabilities of the private bank in consideration of the transfer of its assets to the new bank," the legal result was that the—

"new bank received the assets charged with the conditions with which they were subject in the hands of the private bank, and constituted [constitutes] an express assumption of all defenses to which they were subject in the hands of the former owner."

Here, the plaintiff accepted an assignment or transfer of the assets for a particular purpose defined in the written agreement executed by the two banking concerns, which purpose affirmatively excluded the idea that the plaintiff became invested with the general unrestricted property in this note. The trial court correctly permitted the defendant to assert her defense that the delivery of this note was conditional only; and, since the condition prescribed was not met, the court's further conclusion that the plaintiff was not entitled to recovery was not laid in error.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.