This appeal concerns a suit originally brought by the payee of a promissory note against the maker of the note.
Peek was a stockholder in Gulf Coast Condominium Sales, Inc. (hereinafter referred to as Gulf Coast). Gulf Coast was the selling agent for Bileco Corporation, a condominium developer. Prior to the execution of the promissory note, Seier contacted Peek and expressed a desire to purchase all of the outstanding stock in Gulf Coast. In addition, he wanted to acquire from Bileco the exclusive right to market Bileco condominiums for the benefit of Gulf Coast.
The parties involved negotiated through one Sam McKerall, who was not a party in the suit. McKerall drafted the promissory note. Seier executed the note on June 10, 1982, gave it to McKerall, and instructed McKerall to hold the note until he (Seier) completed negotiations.
The pertinent portion of the note provided that:
 "The undersigned, for value received, promises to pay to the order of Freddie Peek, the sum of ten thousand dollars ($10,000.00), together with interest thereon at the rate of fourteen percent (14%) per annum, payable in three equal annual installments of principal, plus all interest accrued thereon through the date of each payment, commencing one year from the date hereof and continuing on the same day of each succeeding year thereafter until all principal and interest are fully paid." (Emphasis added.)
After Seier failed to make payments on the note, Peek brought suit. The trial court found in favor of Peek, and Seier appeals, raising the following issues:
(1) Whether, under the undisputed evidence, Peek failed to prove a prima facie case entitling him to recover against Seier, particularly whether there was an actual delivery of the promissory note;
(2) Whether Seier's testimony established, without dispute, that Peek's stock, which was the basis of the note, was worthless unless Peek could also obtain the exclusive listing agreement; and
(3) Whether the court erred in sustaining Seier's inquiry regarding changes in the value of the stock between the date of execution of the promissory note and the date the stock was tendered.
 I
We first address the issue of whether the delivery of the note to McKerall constituted delivery and thus was sufficient to prove a prima facie case against Seier. Seier alleged, among other things, that delivery of the promissory note was conditional upon his completion of negotiations for the stock and the acquisition of the exclusive listing agreement.
Code 1975, § 7-3-306, indicates that nondelivery of a note must be pleaded affirmatively by setting it out as a defense to be raised by the maker of a note or anyone else who is not a holder in due course. We find that under Rule 8 (c), Ala.R. Civ.P., both nondelivery and conditional delivery are affirmative defenses which must be pleaded specially in the answer.
Although appellant's argument may have merit[1], we are unable to consider *Page 1081 
it here because, after reviewing the record, we find that this defense was not raised in appellant's answer or at any time during the trial. The general rule is that a defense not asserted in a trial court cannot be raised for the first time on appeal. City of Rainbow City v. Ramsey, 417 So.2d 172 (Ala. 1982), citing Green v. Standard Fire Ins. Co., 398 So.2d 671
(Ala. 1981); Whitman v. Knapp, 285 Ala. 57, 228 So.2d 814
(1969). We, therefore, decline to consider Seier's argument that there was no delivery.
 II
The second issue is whether the trial court's finding that the consideration given in exchange for the promissory note was adequate was palpably erroneous or manifestly unjust. Peek argues that we cannot address this issue since Seier did not file either a motion for new trial or a motion for a judgment notwithstanding the verdict pursuant to Rule 50 of the Alabama Rules of Civil Procedure; he contends that Seier cannot now argue on appeal the question of the sufficiency, weight, and preponderance of the evidence either in support of plaintiff's case on the promissory note or in support of his own affirmative defenses. Although the above rule is correct, it is not applicable here, because this is a non-jury case and, therefore, we will address the merits of Seier's second issue.
Seier argues that testimony clearly indicated that the stock he purchased was worthless without the exclusive listing agreement. Thus, he claims that without the exclusive listing agreement, nothing of value passed between the parties and, therefore, there is want of consideration for the promissory note.
The note itself is "prima facie evidence of sufficient consideration for the execution thereof, and the burden of proof is on the defendant to show there was no consideration."Day v. Ray E. Friedman Co., 395 So.2d 54, 56 (Ala. 1981), citing Ladner Company Real Estate Sales, Inc. v. Smith,277 Ala. 185, 168 So.2d 217 (1964). Because there was conflicting evidence as to whether the consideration was adequate and this presented a question of fact, Nash v. Vann, 390 So.2d 301
(Ala.Civ.App. 1980), citing Hyatt's Supply Co. v. Lyle,222 Ala. 460, 133 So. 3 (1931); Bush v. Russell, 180 Ala. 590,61 So. 373 (1913), and because this is a non-jury case, the above rule must be read in conjunction with the ore tenus rule, which states that findings by the trial court sitting without a jury and hearing the evidence presented ore tenus are entitled to a presumption of correctness unless it is demonstrated that the findings are plainly and palpably wrong or manifestly unjust.Hines v. Heisler, 439 So.2d 4 (Ala. 1983).
After reviewing the record, we find that the trial court's judgment was supported by the evidence. Here, the promissory note itself stated that the note was for "value received." In addition, the following testimony indicates that the transfer of the Gulf Coast stock was the only consideration promised for the execution of the note:
"THE COURT: Hold on a minute.
 "Mr. Seier, I am not understanding anything. What were you supposed to get for the $10,000? Were you supposed to get stock? Were you supposed to get a listing? What were you supposed to get?
"THE WITNESS: I was supposed to get stock.
"THE COURT: Stock, in what corporation?
"THE WITNESS: Gulf Coast Condominium.
"THE COURT: Okay."
Seier also testified at trial that he executed the note, read the note before he signed it, and understood the terms of the note. He further testified that he had been in the real estate business for about fourteen years and was a college graduate. There is no question that the trial court could have found that he understood the note, which is complete on its face; consequently, we cannot find that the trial *Page 1082 
court's findings are plainly and palpably wrong or manifestly unjust.
 III
Finally, we address the issue of whether the trial court properly excluded evidence as to the change in value of the stock between the date of execution of the note and the date of the tender of the stock.
Seier contends that this evidence was relevant to show that Peek failed to deliver the stock within a reasonable time. He claims that in the interim period, the time between the execution of the note and the tender of the stock, the stock became valueless, and thus there was failure of consideration. The testimony at trial regarding this point was as follows:
 "Q What was the date that the stock was offered to you?
 "A I don't know. I don't remember the exact date on that.
"Q What was your best recollection of the date?
 "A I think it was somewhere around, I am just guessing, August or September.
"Q Of what year?
"A It was '81.
"Q '81?
"A Let me see, it was last year so I guess, `82.
"* * * *
 "Q Had the status of the corporation changed from the date that you executed the promissory note, June 10th, 1982, and September of 1982?
 "A On status, I didn't have anything to say to Mr. McKerall.
 "Q I mean had the value of Gulf Coast Condominium Sales changed in any way from those two points?
"MR. CROSBY: I am going to object to that.
"THE COURT: I am going to sustain that.
 "MR. FRIEDLANDER: Again, we would make an offer of proof to the Court that the question goes to the reasonableness of the time of delivery."
We find no merit in Seier's argument. Here, the note stated it was executed in consideration "for value received." This note was complete on its face. Because the stock had value when the note was executed, the trial court properly denied an inquiry into the adequacy of that consideration. The mere inadequacy of consideration alone "is never sufficient to vitiate a contract or conveyance otherwise valid, and the courts are not disposed to enter upon nice calculations to strike a balance on one side or the other." Marcrum v. Embry,291 Ala. 400, 406, 282 So.2d 49 (1973). Having reviewed all of the issues presented, we find no prejudicial error in the trial court's holding. We affirm.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.
[1] Code 1975, § 7-1-201 (14), states that "delivery with respect to instruments, documents of title, chattel paper, or certificated securities means voluntary transfer of possession." Seier contends that he did not voluntarily transfer possession of the note, but instead deposited it with McKerall as an escrow agent, who was to hold it until negotiations with Peek were completed. Seier cites Cannon v. Dillehay,17 Ala. App. 294, 84 So. 549 (1919), for the general proposition that a negotiable promissory "note has no legal inception or valid existence, as such, until it has been delivered in accordance with the purpose and intent of the parties." In addition, Seier relies on Norwood v. Stinnett, 202 Ala. 349,80 So. 431 (1918). In Norwood the court held that a conditional delivery may exist when there is reservation of liability between the parties. 202 Ala. at 350.